Please be seated. Good morning. Welcome, everyone. Our first case this morning is Salk Prairie Conservation v. DOI. Mr. Aronson. Good morning, Your Honors. May it please the Court. Jacob Aronson for Appellant Salk Prairie Conservation Alliance. The District Court clearly erred in concluding that no irreparable harm can occur as a result of off-road motorcycle events on biking and equestrian trails, National Guard helicopter training flights up to five days a week, which will involve takeoffs, landings, and low-level flight paths at tree level, hunting dog training and trialing with firearms year-round, and other special events involving firearms and motorized vehicles. The Alliance presented evidence from the Master Resources, as well as affidavits from four scientific experts, all of which showed that these high-impact activities are likely to cause irreparable harm. The District Court gave three reasons for its decision. Before you get into the merits of the irreparable harm analysis, if you would address the issue preclusion issue. Sure. So as a necessary element of issue preclusion under Wisconsin state law, there must be a final judgment as a necessary element. Actually, is that true in issue preclusion as opposed to claim preclusion? I believe that is the, in the cases cited by both parties, it requires a final judgment. Actually, the finality principle applies differently in the context of issue preclusion, the same as in claim preclusion. The finality analysis is a little bit different. I stand corrected, Your Honor. So perhaps you could address why this is not precluded. So the issues decided by the state court, while they were similar, the case was different in that the state court did not have the four expert affidavits in front of it when it considered the case. Well, it could have, right? That was your burden. Right. You don't get around the preclusive effect of a prior denial of injunctive relief by trying to create a different record in the second case. Well, there's no... That's just an end round around the preclusive effect of the prior order. Right. There's no Wisconsin state court case that clearly stands for that. Right, but the Wisconsin Supreme Court follows the restatement of judgments on preclusion law, and the restatement of judgments analyzes the preclusive effect of prior orders and decisions in the issue preclusion context slightly differently than in the claim preclusion context, and would follow the restatement, which permits denials or grants of preliminary injunctive relief to have a preclusive effect on second litigations. Right. So the Wisconsin courts have used the restatement, but they have not specifically held yet. The only thing that they've held is that issue preclusion would apply to issues decided on interlocutory orders in the same case, but they have not... The court has not clearly held that it would apply in other cases. Right, and that means that we have to predict how the Wisconsin Supreme Court would decide this question. That's right. And so what's your prediction? Well, we think that the issues are different in that before the state court, the federal defendants were not parties to that action. Well, the issues were identical. You made the same claim there that you're making here. Right. The issues were the... In essence, the issues were similar. The state court... Identical. Right. The state court judge balanced all four factors and concluded that a stay or a temporary injunction would not be appropriate, whereas here the district court judge only considered the likelihood of irreparable harm issue. Right, but why isn't the state court's resolution of the lack of irreparable harm preclusive on this... The same issue in federal court? You don't get two tries at this. That's the whole point of preclusion law. You failed to convince the state courts that there was irreparable harm here, and so you don't get a do-over in federal court. Right. Well, another distinction there is that the question is whether there will be irreparable harm before the court reaches a decision on the merits of the case. Right, but we're considering all the same harms, right? Well, the timeline, I think, is relevant. The federal court here was... The district judge predicted that he would likely reach a decision by the spring, whereas the state court judge had no set timeline for when irreparable harm may occur. Right. That works against you. That doesn't work for you. Well, with all due respect, Your Honor, the district court... The district court... Sorry. The state circuit court considered whether there would be irreparable harm before it reaches a decision on the merits. And said, no, there is no irreparable harm here. Among other things, there were other bases for the decision for the denial of preliminary injunctive relief, but the pertinent ruling is that there's no irreparable harm here, and the court of the district court did not hear the case, the full merits of the issue. I mean, Your Honor, I would just go back to saying that there's only... The only cases that stand for that, that the preliminary injunction would have preclusive effect, that that ruling would have preclusive effect, are from other jurisdictions. I'm aware of that. The state Supreme Court has not spoken to this precise question, which simply means that we need to predict how it would decide the question. That's correct. And because the state Supreme Court has a long history of following the restatement of judgments in preclusion law, and the restatement of judgments would, if applied here, preclude this second litigation of the identical issue of whether your clients would suffer irreparable harm. So why am I wrong on that? Your Honor, I would just submit that the law is not clear in Wisconsin, and the only law that's been cited that we could find is that it's... You obviously don't want to engage the merits of the preclusion question here, so why don't you go ahead and move on to your best argument for irreparable harm. Sure, Your Honor. So the alliance presented substantial evidence from the expert affidavits, as well as from the master plan, that there are some activities... What's going on right now? So right now, all of those activities are authorized to occur. And they are occurring? So to our knowledge, the National Guard helicopter training exercises are currently occurring. How long has that been going on? For several decades, Your Honor. Yeah. A long time. Yes. Okay, and I don't know where the birds have gone to and from during that time. Obviously, helicopters are noisy. You can remember that in Vietnam. They're noisy. Yes. And as far as the motorcycles, they're going to be six times a year? Yes, they're authorized up to six times per year. Is that a race, or is that... What's going on each time? They're described as events with up to 100 motorcycle riders per event. They can last from 9 a.m. to 4 p.m. And how long has that been going on? That has not been occurring. Okay, so that's new? Yes. Okay, and then as far as training bird dogs and other dogs, how long has that been happening? Is that new? I believe that's new, yes, because the property has not been open for those events. When I looked at this, I was sort of concerned, or I just glanced at that, where in 1942, there were 80 farm families that were displaced. Is that right? That's correct. That bothered me, but I guess that's what happens in a war. So then they build all these buildings and everything from the munitions plant, and then close that up, and now it's something else. But anyway, that's... I'm just sort of curious about the irreparable harm. What goes on in the winter? They don't run motorcycles in the winter, do they? So the motorcycle events are authorized year-round. Two events can occur during the summer breeding season, and the other four events presumably would occur during the rest of the year. Snow and all that? They're authorized to occur then, whether it's practically possible. Are these actual motorcycles, or do they include ATVs and other things? No, just motorcycles. And so the Alliance presented a number of strong evidence that these activities will cause harm, not just during the breeding season, which the district court judge appeared to focus on, but year-round. The helicopter exercises, as the master plan notes, can create substantial wind, noise, and dust that can... What was this substantial evidence that you talk about? Right, so there's a number of statements from the master plan that explain what the effects of these activities would be. So disrupting wildlife, the master plan noted that motorcycle events could result in slow-moving species, such as snakes, being run over by the motorcycles on the trails, because the trails are in areas that for the other 360 days out of the year do not have motorized vehicles on them. It can also cause wildlife to leave the area for longer than the period of time that just the event would be going on. The affidavits presented demonstrated that the activities can create what's called, what's termed an ecological trap, where the activities result in conditions that attract wildlife to an area temporarily, but then create long-term... Those affidavits aren't especially elaborate, are they? The district court noted that they were conclusory. However, I think if you read the entire affidavit, you would find that they do explain... I did. Yeah. Now, what other evidence is there besides the affidavits to back up the statements in the plan? Sorry, the statements of? In the plan. You said that the plan made statements. Oh, yes. I'm wondering, was there any other evidence other than what those affidavits said to back up the assertions of the plan? The master plan was prepared by the Wisconsin Department of Natural Resources, and they included a bibliography at the end where they cited the basis for their analysis. Just a bibliography? Yes, and they referenced throughout the plan, they referenced studies that have been conducted. In addition to the affidavits. Right, so the affidavits were... They were later, I understand, yeah. In other words, there's independent evidence to back up the plan other than the affidavits. Am I right, or wrong? I believe that's correct, Your Honor. Now, one thing that the district court did in its reasoning is that it appeared to focus on the population level effects of harm. The district court noted that because the area used to be an army ammunition plant and has since been restored over the past 20 years, that it was possible that any harms that might occur could be remedied in the future by having habitat restored and wildlife may return to the area. But the district court did not look at individual level impacts to animals that might be harmed. So even if in the long term the area may be restored from any damage that could occur from these activities, it's important to look at the individual harm to individual species that may be killed or damaged otherwise as a result of these activities. So if there is a bird that dies or a snake that gets run over, that dead animal cannot return and therefore that is, that clearly meets the definition of irreparable harm. Even if at a population level over the long term, there may be, the habitat or the wildlife may recover. This is a preliminary injunct. This is a question of preliminary. There's going to be a hearing on what summary judgment in the spring? The district court hasn't set a hearing. We're currently in the process of briefing the summary judgment issues before the district court. Where all this stuff is going to be argued. The only thing I question is the winter. Most snakes are underground in the winter. A lot of birds leave. There are some that stay. And then there's the issue of the helicopters and how long they've been around and whoever's, whatever animals are tolerating that have been doing that for a long time. Would you anticipate if you can clear all that out, there will be a new, we'll call it evolution of new species and find a more comfortable place? Rather than what the status quo is or was or whatever. So the helicopter training is occurring, to our knowledge it's occurring right now and so the harm from the helicopter training is ongoing throughout the winter. Okay, that's a given. Whatever animals aren't there because of the helicopters just aren't there. And other animals are tolerable. I know some places that we talk about birds. There was one event up in Michigan a long time ago where they really worked very hard to get eagles to nest. And then once the eagles did show up and nest, they blocked off that part of the park where people couldn't go there. That sounded pretty silly to me, a park. Where I am they're what they call the ospreys. And they've learned to tolerate people, which is the way it ought to be. So I don't know. There's going to be, whatever you're going to do with the actual hearing and what your arguments are going to be when they're developed, I'm mostly not concerned because this is a preliminary injunction. And it's just going to be for a few months. So it may be for a few months. The district court judge indicated that he would likely issue a decision on the merits in the spring. However, there's no guarantee that he would do so before next spring's breeding season begins in April. And so any of the harms that are most severe during the spring and summer breeding season could, even though this year's breeding season has concluded, they could recur and come up next spring. Are they using this area, the motorcycles, are snowmobiles running in the winter? I believe snowmobiles are permitted. They are? I believe so. I didn't see where that was mentioned. I cannot. I mean, they're kind of noisy. I mean, that's interesting that nobody talked about snowmobiles because you know what they are. I mean, the people that ride them and how the variations and what goes on, that's different. Maybe you ought to add that. So the motorcycles would be allowed on biking and equestrian trails that do not normally have motorized activity. And so those would be farther into the area, into the recreation area, in areas more removed from roads and other parts that would normally have motorized vehicles and the loud noises associated with them. And so in that sense, the harm from the motorcycles on the biking and equestrian trails would be more pronounced than other motorized vehicles that are allowed in the park. Turning to the merits, if there are no other questions about the irreparable harm issue, the alliance has demonstrated a likelihood of success on the merits as well as the other factors for a preliminary injunction. And this court has the authority when the district court has not considered the full factors for a preliminary injunction and has only ruled on one factor, in this case irreparable harm, this court can go ahead and consider all four factors in its analysis. And we would encourage this court to do so. If there are no further questions now, I'll reserve the balance of my time for rebuttal. That's fine. Thank you. Mr. Oakley. May it please the court. My name is Robert Oakley. I'm here on behalf of the federal government, the Department of Interior, and the Park Service. Also arguing for appellees today is Mr. Gabriel Karp Johnson, who represents Wisconsin. Now, his brief focused on the collateral estoppel issue, and he made the argument. So if the court were to want to go to that first, then he probably should precede me. But otherwise, I'm ready to talk about irreparable harm. Well, does the Department of Interior have a position on the preclusion question? We did not join on that, and it involved making a judgment about Wisconsin law, and we just felt the state was better positioned to make that judgment on Wisconsin law. So whatever the court wants in terms of how we proceed, but I was planning to go to the issue of irreparable harm. That's fine. All right. Well, first, the declarations or affidavits that were filed here conflate harm with irreparable harm. Irreparable harm is a required element for a preliminary injunction. The Supreme Court and this court has repeatedly said that a preliminary injunction is an extraordinary remedy. And this court and the Supreme Court have also said that a key element in establishing irreparable harm is that the harm will be suffered before the case can be decided on the merits. We go through their affidavits in our brief around pages 17 and 18 of our brief, and you just can't find anything there that amounts to irreparable harm. Now, contrary to what counsel says, I don't know of any case that holds that the death of a single bird or other animal is irreparable harm. These animals are not endangered species. And counsel is not here representing snakes or birds. Snakes and birds do not have standing. His clients have to have standing, and the standing that they try to establish in their affidavits is that they enjoy seeing birds and they feel or fear that the activities that will be allowed here will cause a diminution in the population of the birds. I don't believe anybody is a big fan of snakes. I didn't see that in the declaration. Perhaps I missed it. But the snakes, the death of an individual snake or the death of an individual bird, which surely happens all the time for multiple reasons, is not irreparable harm. Now, on the time period here, the opening brief has been filed in district court. The government and the federal government in Wisconsin's response briefs are due, I believe they were due this week, they may be filed next week, and the briefing will be finished in December. We have no reason to doubt the district court's prediction that he'll decide this case by the spring. And again, if you go back to the declarations, and by the way, these declarations were written by people who never have been to the site, who know about it only through reading documents. They never tied to any sort of time period. There's also the inconsistency. The district court pointed out that while some uses the alliance objects to, other uses it's willing to accept. It objects to the firing of blanks in the 72-acre parcel south of most of the rest of the park, and also not contiguous with the rest of the park. But there's hunting allowed in the park, so guns will be... You said firing blanks? Blanks, yes. Is that in the dog training? Yes, the class two dog training. Motorcycles will only be used six days a year, but they can be used 365 days a year on the roads that are in the park, and because this park was an industrial site at one time, there are quite a few roads, and we cite from the Wisconsin Environmental Impact Statement, a statement not disputed, that you're rarely less than half a mile from a road. Are these paved roads? Paved, although the pavement in some cases is not so great. Yes, they're paved roads. I'm not talking about trails. And again, they're left over from when this was a very large ammunition plant. I asked about snowmobiles. Do you know that? Yes, the snowmobiles are not... The injunction does not cover snowmobiles. They are allowed under the master plan that's in place, and there's no dispute, or there's no effort by the alliance, the appellants in this case, to enjoin the use of snowmobiles. And as Your Honor pointed out, snowmobiles are quite noisy, or at least in comparison. They are similar to motorcycles in the amount of noise that they can generate. Your Honor, anybody can run a snowmobile. Yes, Your Honor. We don't have too many of them in Virginia, so I'm not an expert on them, but I've heard them, and they can make some noise. And I would just, again, to go back to the affidavits, they don't talk about this. They don't say, why is it that six days of motorcycle usage would harm the birds? They talk about the motorcycle usage as though it's occurring 365 days a year. Of course it's not. They don't talk about the fact that the Class 2 dog training is occurring on 172-acre parcel. That abuts a highway. That abuts a highway and is not contiguous with the rest of the park. And the helicopter activity that is contested is also in a more isolated area. Yes, Your Honor is correct. Because this was an industrial-type site before, there's a landfill which is fenced off, and the public, for understandable reasons, is not given access to that, and that's where the helicopters take off and land. And that's been going on for decades. For decades, and no one disputes that. So if, to the extent, well, the Wisconsin people looked at this and found that wildlife, the birds, in fact, were doing well, that were living under the flight path of the helicopters, but to the extent that the helicopters could cause harm, it would have already occurred and would have been in place for at least 20 years. So there's no irreparable harm here. The bottom line is that at most they can say noise will harm birds, but it does not constitute irreparable harm. And given the extraordinary nature and the remedy that they're seeking, their inability to either shut deep to show that they're going to suffer irreparable harm before the judge rules on the case, and it's moving right along, or before, or really ever, because nobody puts a timeline in his or her affidavit saying irreparable harm will occur after X number of years of these activities. They simply have not shown irreparable harm. I could address the merits if the Court's interested, but otherwise I would turn it over to my colleague from Wisconsin and let him address the collateral. That's fine. Thank you. Thank you. We would just ask that the Court be affirmed. Thank you. Good morning, Your Honors. May it please the Court, Assistant Attorney General Gabe Johnson Karp for the State of Wisconsin. As the Court has already discussed this morning, the question of issue preclusion provides an alternative basis on which to affirm the District Court's decision below. Unless the Court has any questions about the specific proceedings in state court, I would just spend my limited time responding to a few points that the Alliance raised in its reply brief regarding the inapplicability of preclusion here. The Alliance first argues that Wisconsin law would not allow the application of issue preclusion here. Wisconsin law, as the Court has already indicated, indicates quite to the contrary. The closest case that I was able to find, which as we've discussed, is not directly on point. There's no case referring specifically to preliminary injunctions having preclusive effect. But the case of precision erecting, cited in our brief, is a case in which the Wisconsin Court of Appeals concluded that within the same action, before any final judgment resolving all the claims on the merits, that issue preclusion could apply there. There, the Court took a very purpose-driven approach to analyzing finality for purposes of issue preclusion and asked what purpose would it serve to allow re-litigation of this issue. This issue has been finally resolved. In that case, it was on a partial motion for summary judgment. In this case, the issue of irreparable harm for temporary relief has been finally resolved in the Sauk County Circuit Court. So precision erecting strongly suggests that Wisconsin courts would support applying issue preclusion in this context. And there's simply no other Wisconsin law suggesting to the contrary. Precision erecting has been cited favorably by the Wisconsin Supreme Court in a state of real versus real. So the best that we could tell is that Wisconsin courts would apply issue preclusion in this context. The broader preclusion analysis in Wisconsin follows the restatement, generally speaking. And what is the position of the restatement on this point? Your Honor, I didn't find a definitive statement, but the restatement did cite some cases discussing the possibility of applying issue preclusion in the context of a denial or a grant of preliminary injunction. It actually cited a few cases from this court on that point. Well, the restatement does specifically address the finality principle in preclusion doctrine as it applies in the case of issue preclusion as opposed to claim preclusion and indicates that the analysis in an issue preclusion context doesn't require the same concrete finality as claim preclusion. That's my understanding as well. And I believe that that's what the court in precision erecting was following. The court did discuss, I believe it's Sections 27 and 28 of the restatements. Actually, the relevant section is Section 13 of the restatement. Oh, I apologize, Your Honor. Everybody seems to have missed that. But that is the requirement of finality, and it distinguishes between claim preclusion res judicata and issue preclusion collateral estoppel. And in the latter context, the finality principle applies with less formality. I think that's probably the best way to put it. And that accords with the Michelle T. case from the Wisconsin Supreme Court, which is the seminal case on issue preclusion. I agree, Your Honor. I'm sorry. Was the matter of irreparable harm essential to the Wisconsin court's determination? Your Honor, I think the finding of no irreparable harm was, I don't know that it was central, which is, I think, why we focused on issue preclusion rather than claim preclusion, that the court didn't decide all the very same issues in a way that would further the claim preclusion analysis. We're not even in claim preclusion here. This is issue preclusion or nothing. And that's our position, that on the issue of irreparable harm, they are precluded. But to Judge Ripple's question, the circuit court, the state circuit court, addressed all of the injunction factors, did it not? It did. And among those are the issue of irreparable harm and said there was no irreparable harm shown here. That's correct. And that the plaintiffs had not carried their burden to establish that element, necessary element for preliminary injunctive relief. That's correct, Your Honor. So your response to Judge Ripple's question would be what? Well, as I understood the question was whether the irreparable harm was necessary to its conclusion. And I guess the short answer is yes. Well, what do you do with the court saying it was a close call? And what do you do with the language that there was not quite enough evidence that the plaintiffs will suffer irreparable harm? Your Honor, that doesn't diminish the conclusiveness of the court's decision. The court disposed of the issue of irreparable harm by finding that there was not enough presented to establish irreparable harm. The fact that the court decided its case on a continuum doesn't afford the alliance another opportunity to litigate that question in this court. What did the state court of appeals say? The state court of appeals was even more forceful in its language, Your Honor, saying that it didn't find that it was a close call. The court was, the alliance has not persuaded us that the temporary disruption of the habitat and nesting areas of the birds in the limited areas at issue would result in either substantial or irreparable harm. So we have multiple statements in the record. Is irreparable harm a matter of fact under Wisconsin law? I would think it's a question of law. The findings of fact to support the conclusion would be the findings and the legal conclusion of whether that's irreparable harm is a legal determination. I'd briefly address just the point the alliance made about the existence of the affidavits. And those being new in this record, that's incorrect. I should say new being in the federal court proceeding. Those five affidavits that were proffered to the district court were in fact proffered to the Wisconsin state court. They were submitted, I believe it was the day after the motion for reconsideration. So they were submitted at the reconsideration phase to the state court? That's correct, Your Honor. The alliance in their reconsideration brief, and we addressed this in our footnote nine of our brief, the alliance asked that the court consider those affidavits in ruling on reconsideration. And the Sauk County Circuit Court, in its brief order disposing of the motion for reconsideration, noted that it had considered everything in the file. And there's no indication that they did not consider these five additional affidavits. And as the court has indicated, there's also the sandbagging consideration that it can't be enough to hold back some affidavits that would support the same claims and then to bring those forward in a subsequent action to avoid issue preclusion. Given that the alliance has had this full and fair opportunity in state court, the state of Wisconsin would ask the court to affirm the decision below on this alternative basis.  So I would like to address two issues to clarify. The first is that the affidavits were not presented with the reconsideration motion in the state court. They were filed the following day with a separate motion that was filed on a separate issue on the merits in that case. Also... Well, is it clear that the state court considered them? Well, it would not have been appropriate for the state court to consider them because they were not before the state court originally. The court has reviewed its decision and the submissions of the parties related thereto, the last of which was filed by the petitioner on April 27th. Does that include these affidavits? That would include the affidavits. So the court considered them? By that statement, the court may have considered them, yes. Why didn't you just tell us that it didn't? Well, they were not...the affidavits weren't presented with the reconsideration motion. Whose fault is that? Yours. Well, it would not have been appropriate to include them with the reconsideration motion. And whose fault is that? You could have submitted them initially if you didn't with the initial motion. Now you're wanting a second try in federal court on this identical issue of irreparable harm? Well, the second thing I would like to address is that the issue is not exactly identical because the state circuit court judge balanced all the factors and noted that it was a close call. We're focused on the issue of irreparable harm. The fact that the state court gave more robust treatment to the other injunction factors is not a factor here in the analysis about whether its ruling on irreparable harm gets perclusive effect here. Why is it reasonable to get a second kick at this same cat? Right. I understand the concern. But the issue before the circuit court was the circuit court did not... the circuit court noted that there was a possibility of irreparable harm and that balancing all four factors as it was a close call, it declined to issue the injunction. Thank you, Your Honors. Thank you. Thanks to all counsel. The case is taken under advisement.